UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REBECCA R. GRAY,
    Plaintiff,

        v.

RAY LAHOOD, Secretary, Department of Transportation

    Defendant.

Civil Action No. 11-2188 (JDB)

### MEMORANDUM OPINION & ORDER

Defendant Ray LaHood, Secretary of the United States Department of Transportation ("DOT"), has moved for dismissal or alternatively for summary judgment on two counts of plaintiff's discrimination complaint. Plaintiff Rebecca Gray, who worked for the agency after accepting a position with a government contractor, brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 et seq., alleging that she was not selected to two positions with the agency due to sex and age discrimination, that her position was terminated due to retaliation, and that she was subjected to a hostile work environment. DOT challenges Gray's termination claim (Count IV), arguing that she was a contractor and not an "employee" within the meaning of Title VII at the time of her termination. DOT also argues that Gray's hostile work environment claim (Count II) should be dismissed because she failed to exhaust her administrative remedies for this claim and because she fails to state a claim. For the reasons explained below, the Court will deny DOT's motion at this time.[1]

---

[1] Gray's Statement of Material Facts As to Which There Exist Genuine Issues fails to comply with Local Rule 7(h) because it contains no citations to the record. See Local Rule 7(h)(1) (statement "shall include references to the parts of the record relied on to support the statement"). Although the Court is ruling in Gray's favor at this stage, she is admonished that further failures to comply with the Local Rules may result in adverse factual inferences or other action by the Court.

1

**BACKGROUND**

Plaintiff Rebecca Gray, a woman born in 1947, is trained in psychology. See Compl. [Docket Entry 1] ¶¶ 2, 5 (Dec. 9, 2011). In April 1999, she accepted a position as a Human Factors Analyst with a government contractor providing support services for the Federal Aviation Administration (FAA), and she then accepted a job with L-3 Communications Titan, a government contractor providing similar services. See id. ¶ 7. FAA's Human Factors Research and Engineering Group within DOT analyzes how people see, hear, think, and physically function to ensure systems work as effectively and safely as possible. DOT contracted with HiTech Corporation to perform tasks associated with that work. HiTech, in turn, subcontracted the work to Titan. See Def.'s Ex. A [Docket Entry 10-3] ¶ 1 (June 15, 2012). Pursuant to these arrangements, Gray began working onsite at FAA offices in 2001.

In subsequent years, Gray applied for vacancies in the Human Factors branch but was not selected. See Compl. ¶ 9. In 2006, she filed an Equal Employment Opportunity (EEO) complaint against DOT under Title VII based primarily on two nonselections. See id. ¶ 14; see also Pl.'s First EEO Compl. [Docket Entry 20-1] (Jan. 15, 2006). At some point, the agency decided not to develop an additional statement of work for the HiTech Contract, and in 2008, when the existing work concluded, Gray was informed that her position was eliminated. See Compl. ¶ 28. The agency explained that the decision was based on budget constraints. Id. Gray filed a complaint against DOT based on this termination. Id. Subsequently, on December 9, 2011, Gray filed this suit.

While performing work for the Human Factors branch, Gray worked full time onsite at the agency. HiTech and Titan, rather than the agency, paid Gray's salary and benefits, and

calculated her leave. The parties dispute the level of supervision agency officials exercised over Gray's work.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary, to provide the "grounds" of "entitle[ment] to relief," plaintiffs must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009).

"[I]n passing on a motion to dismiss . . . the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993). Therefore, the factual allegations must be presumed true, and plaintiffs must be given every favorable inference that may be drawn from the allegations of fact. See Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). However, the Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint. Trudeau v. FTC, 456 F.3d 178, 193

(D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Summary judgment, in turn, is appropriate when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of motion only), admissions, interrogatory answers, or other materials," which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1); see also Celotex, 477 U.S. at 323.

In determining whether there exists a genuine dispute of material fact sufficient to preclude summary judgment, the Court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. Moreover, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted). Summary judgment, then, is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## ANALYSIS

### I. Plaintiff's Status as an "Employee" Under Title VII

#### a. Procedural Status of "Employee" Requirement

Title VII provides that "[a]ll personnel actions affecting employees or applicants for employment . . . in executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). DOT argues that Gray was a contractor, not a federal "employee[]" covered by § 2000e-16(a). Because DOT maintains that the employee requirement is jurisdictional, it further contends that dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1) is warranted, see Fed. R. Civ. P. 12(b)(1).

As this Court has previously explained, the "employee" limitation in § 2000e-16(a) is not jurisdictional. See Harris v. Attorney Gen. of the U.S., 657 F. Supp. 2d 1, 7-8 (D.D.C. 2009). This conclusion follows from the Supreme Court's decision in Arbaugh v. Y & H Corp., 546 U.S. 500 (2006), which held that a defendant's status as an "employer" within the meaning of a different Title VII provision, 42 U.S.C. § 2000e, is not a jurisdictional question, but one that goes to the merits of the case. In just the same way, the statute's "employee" requirement in § 2000e-16(a) goes to the merits because it "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts," id. at 515 (internal quotation marks omitted). And "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." Id. at 516; see also Harris, 657 F. Supp. 2d at 8 ("[T]he question of plaintiff's 'employee' status in this case is so closely analogous to the question in Arbaugh that plaintiff's status must be considered a merits issue, rather than a jurisdictional matter." (citation omitted)).

Accordingly, this question must be considered under the summary judgment standards of Rule 56, rather than under the dismissal standards of Rule 12(b)(1), which would have allowed the Court to "review the evidence and resolve the [factual] dispute," see Arbaugh, 546 U.S. at 514. The Court notes that no discovery has yet occurred. As explained below, given the state of

the record at this stage, genuine disputes of material fact remain that preclude a grant of summary judgment at this time.

### b. Determination of Plaintiff's "Employee" Status

In determining whether a plaintiff is an "employee" of an agency rather than an independent contractor, the D.C. Circuit applies an elaborate test derived from common-law agency principles. See Spirides v. Reinhardt, 613 F.2d 826, 831 (D.C. Cir. 1979). The "most important factor to review" under Spirides is "the extent of the employer's right to control the means and manner of the worker's performance." Id. (internal quotation marks omitted). The Court must also balance several other factors, which include:

> (1) [T]he kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; I. e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

Id. at 832. The D.C. Circuit has subsequently clarified the analysis by collecting these factors into four groups. See Redd v. Summers, 232 F.3d 933, 939-40 (D.C. Cir. 2000).

The first group, the intent of the parties, consists of factor (11) only and plays a relatively minor role in the analysis. Because "the intent of the parties alone cannot waive protections granted to an individual under any act of Congress," the intent to make the individual an employee "is more likely to prove the relationship than the opposite intent is to disprove it." Id. at 939 (ellipsis and internal quotation marks omitted). The second group, comprised of factors (1), (2), and (8)—the supervision and skill required and whether the task is integral to the agency's business—addresses "whether contracting out work is justifiable as a prudent business

decision" or whether "the business bona fides" of the decision can be questioned, "possibly suggesting a purpose to circumvent rights afforded to employees." Id. The third group, containing factors (3) and (6)—whether the individual or the agency furnishes the equipment and place of work and the manner of the relationship's termination—"seem[s] to renew the question of the client's control over the work (which, we recall, is in a sense the ultimate determinant)." Id. The final group of factors "ask[s] whether the relationship shares attributes commonly found in arrangements with independent contractors or with employees," by looking at the duration of engagement, the method of payment, leave, retirement benefits, and the entity that pays social security taxes (factors (4), (5), (7), (9), and (10)). Id. at 940.

The D.C. Circuit has suggested in dictum that a different test, formulated by the Third Circuit in NLRB v. Browning-Ferris Industries of Pennsylvania, Inc., 691 F.2d 1117, 1123 (3d Cir. 1982), might better address "joint employment" situations in which the plaintiff alleges that she was an "employee" of two organizations at once. See Redd, 232 F.3d at 938; see also Harris, 657 F. Supp. 2d at 9-10. Under Browning-Ferris, the question is whether "one employer, while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." Redd, 232 F.3d at 938 (alteration omitted) (quoting Browning-Ferris, 691 F.2d at 1123).

In her opposition, Gray indeed argues that the employment relationship is "joint," but neither party cites the Browning-Ferris test.[2] Where the parties fail to invoke Browning-Ferris, the D.C. Circuit has applied Spirides to a joint employment question. See id. ("Accepting the parties' assumptions arguendo, we proceed to apply Spirides."). In any case, because both tests focus on the control the agency exercises over the terms and conditions of employment, the

---

[2] Gray cites only EEOC cases, but the test she suggests is virtually identical to the D.C. Circuit's in Spirides.

7

analysis is quite similar. See id. (leaving open the question whether "there is a material difference between the two"). The biggest "misfit" between the two tests concerns the last group of Spirides factors (duration of engagement, the method of payment, leave, retirement benefits, and taxes), which probes "whether the relationship shares attributes commonly found in arrangements with independent contractors or with employees." Id. at 940. Accordingly, the Court will be particularly cautious in relying on this set of factors to conclude that a plaintiff is not an employee where, as here, she has alleged a joint employment relationship. Aside from exercising that caution, the Court will apply Spirides, as refined in Redd.[3]

No discovery has yet occurred. On the limited record available, DOT has failed to establish the absence of a genuine issue of material fact on the most significant question: the extent of the employer's right to control the means and manner of her performance.

Gray has submitted a sworn declaration stating that she worked for the agency for several years, and that she worked exclusively onsite, using the agency's "computers, copying machines, secretarial assistance, and whatever else was needed" to complete her assignments. Pl.'s Ex. A [Docket Entry 14-1] ¶¶ 4, 10 (July 6, 2012). According to Gray's declaration, Glen Hewitt, an agency official, was her "immediate supervisor" throughout her employment. Id. ¶ 10. Critically, Gray declares that Hewitt "assigned [Gray's] day-to-day work, supervised and monitored what [she] did and how [she] did it." Id. In describing their interactions, Gray states that they were "constant," including face-to-face meetings, e-mails, and phone calls. Id. Hewitt "control[led]" Gray's "daily work assignments," "determined what meetings, conferences, and seminars [she] attended," and approved her travel expenses and what she "did and did not do" at meetings. Id. Gray attests that "[t]hough technically a contract employee," she served "solely at Hewitt's

---

[3] Given the Browning-Ferris test's focus on the terms and conditions of employment—the factors that are ultimately dispositive to the Court's analysis here— applying that test instead would lead to precisely the same result. Hence, regardless of whether the two tests can ever lead to different results, they do not do so here.

pleasure," that Hewitt "had the power to have [Gray] replaced by the contractor if he saw fit," and that "his evaluation of [Gray's] performance determined how much [she] was ultimately paid." Id. ¶ 11. Gray also declares that Hewitt informed her that her position was eliminated. Id. ¶ 7. To be sure, these statements are quite general, and might well be undercut by specific details about Gray's relationship with Hewitt and the influence he had on her daily work. Cf. Arrington v. United States, 473 F.3d 329, 337-38 (D.C. Cir. 2006) (statements made by the party opposing motion for summary judgment, if sufficiently conclusory, need not be accepted as true). But if evidence consistent with Gray's declaration were adduced at trial, a reasonable jury would be able to conclude that the agency had a right to control the means and manner of Gray's performance. And where "an employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist." Spirides, 613 F.2d at 831-32.

Gray's argument finds further support in the "Delivery Order" for the contract with HiTech, which appears to be a document specifying the tasks Gray was assigned to perform. See Pl.'s Ex. D [Docket Entry 14-4] (July 6, 2012). The Delivery Order (only excerpts of which are part of the record at this stage) describes tasks that are intimately intertwined with the agency's day-to-day operations, such as "keeping staff abreast" of efforts, "coordinating program efforts with the organizations," participating in meetings, advising the various teams, and "assist[ing] in the development of" various documentation. Id. at 1, 4. And rather than setting a concrete schedule, the Delivery Order provides that the tasks be completed "as required by the FAA." Id. at 3; see also id. at 8, 9, 11. At least absent further explanation by DOT, the nature of the work described is consistent with Gray's statements in her declaration about Hewitt's extensive supervision over and absolute control of her day-to-day work.

9

Several other factors weigh in DOT's favor, however. The evidence is undisputed that DOT did not maintain employment records for Gray, and that the contractor issued her check, deducted taxes, made retirement contributions, and kept track of her leave (Group 4). It is also undisputed that the agency intended to treat Gray as a contractor, as reflected by the contract language (Group 1). But given the substantial dispute about the actual control the agency had over Gray's day-to-day work—the critical question—it might well turn out that Gray was an agency employee in substance, if not in form. In such a case, Title VII's "employee" limitation would be satisfied. See Spirides, 613 F.2d at 831 (the determination hinges on "the 'economic realities' of the work relationship"). The Court again emphasizes that the factual dispute might merely be a result of the underdeveloped record at this pre-discovery stage of the litigation. See Nixon v. Freeman, 670 F.2d 346, 362 (D.C. Cir. 1982) ("decision by summary judgment is disfavored when additional development of facts might illuminate the issues of law requiring decision"). As the record stands, however, DOT has not done enough to establish an absence of a genuine dispute of material fact and hence to justify summary judgment at this time.

## II.   Hostile Work Environment Claim

"Government employees alleging discrimination in violation of Title VII . . . must exhaust administrative remedies before bringing their claims to federal court." Hamilton v. Geithner, 666 F.3d 1344, 1349 (D.C. Cir. 2012). Gray filed two EEO complaints against DOT and waited an appropriate amount of time before commencing the suit. Nonetheless, DOT argues that Gray failed to exhaust her administrative remedies as to the hostile work environment claim because she did not allege a hostile work environment in her EEO complaints. But DOT's argument rests on a faulty factual premise. Gray's first EEO complaint—which DOT initially failed to provide to the Court despite purporting to cite and attach "Plaintiff's EEO Complaint,"

see Def.'s Mot. to Dismiss in Part [Docket Entry 10-2] at 17 (June 15, 2012)—contains several paragraphs under the heading "Harassment/Hostile Work Environment." See Pl.'s First EEO Compl. at 3. These paragraphs describe negative treatment that Gray labels "shunning," the psychological impact of this alleged treatment, similar concerns about "treatment from the males" experienced by another woman working in the same environment, negative comments Gray alleges were made "about females working in Human Factors," and instances in which the agency officials in question allegedly "reduced to tears" other women. Id. Accordingly, Gray's EEO complaint contains both "the words 'hostile work environment'" and "factual allegations supporting such a claim." See Park v. Howard Univ., 71 F.3d 904, 908 (D.C. Cir. 1995) (dismissing claim for failure to exhaust where EEOC charge contained neither). Compare Hamilton, 666 F.3d at 1350 (dismissing claim for failure to exhaust where "formal EEO complaint makes no mention of" challenged incident). To be sure, in its acceptance of the EEO complaint, DOT identified solely a nonselection claim as "accepted for investigation." See Letter from Tami L. Wright to Rebecca Ruth Gray [Docket Entry 20-3] at 1 (Jan. 15, 2013). And Gray, although responding to the agency's acceptance to ask that the second nonselection be included, did not ask that a hostile work environment or general discrimination claim be added. But DOT has not argued that, for purposes of exhaustion, the contents of the EEO complaint should be limited by the agency's acceptance, let alone cited authority to support that proposition, and so the Court will not, on this record, limit the EEO complaint in this way.

Alternatively, DOT argues that Gray has failed to state a claim as to the existence of a hostile work environment. See Fed. R. Civ. P. 12(b)(6). A hostile work environment claim lies only where the workplace "is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and

create an abusive working environment." See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted). In support of this claim, Gray alleges that "she was subjected to intimidation, ridicule, and insulted because of her gender, resulting in a severely hostile and abusive work environment that adversely affected the terms and conditions of her work place." Compl. ¶ 41. Although this statement alone would be plainly inadequate, see Twombly, 550 U.S. at 555, other portions of Gray's complaint (incorporated into Count II), make factual allegations that take this claim beyond mere "labels and conclusions," see id. For instance, Gray alleges that another female employee "found the work environment so gender hostile" that she filed a gender discrimination complaint, Compl. ¶ 19, that Gray "was not treated professionally as an equal," id. ¶ 22, that "her input and comments were largely ignored," id., that her supervisor "yelled at Gray, belittled, mocked, and otherwise criticized her competence," leading to "mental anguish" that required medical treatment, id. ¶ 23, that several other women "were victims" of one of the agency officials' "denigrating comments," id. ¶ 24, that Gray "was treated with disdain, snubbed, and excluded from meetings," id. ¶ 25, and that she was subject to critical and inaccurate memoranda by her supervisors, id. ¶ 27. Together these allegations suffice—although barely—to state a plausible claim of a workplace "permeated" with gender discrimination. See Iqbal, 129 S. Ct. at 1949; see also Twombly, 550 U.S. at 555 ("detailed factual allegations" are not necessary). Hence, the Rule 12(b)(6) motion will be denied.

## CONCLUSION

Accordingly, it is hereby **ORDERED** that [10] defendant's motion to dismiss in part or for summary judgment in part is **DENIED**; and it is further

**ORDERED** that defendant shall answer plaintiff's complaint by not later than February 1, 2013.

**SO ORDERED**.

/s/

JOHN D. BATES
United States District Judge

Dated: January 18, 2013